1
2
3
4
5
6
7
8
9      **UNITED STATES DISTRICT COURT**
10     **SOUTHERN DISTRICT OF CALIFORNIA**

11     UNITED STATES OF AMERICA,          CRIM CASE NO. 11cr2921WQH
12                        Plaintiff,      CIVIL CASE NO. 13cv0027WQH
13        vs.                             **ORDER**
       RUBEN NUNEZ MORENO,
14                        Defendant.

15     HAYES, Judge:

16          The matter before the Court is the motion to vacate, set aside or correct sentence

17     by a person in federal custody pursuant to 28 U.S.C. Section 2255 filed by the

18     Defendant Ruben Nunez Moreno.  (ECF No. 42).

19                                      **FACTS**

20          On June 2, 2011, Defendant was detained at the Port of Entry at San Ysidro,

21     California after a narcotics dog alerted agents to the passenger rear quarter panel of the

22     vehicle he was driving.  Subsequent investigation revealed a non-factory compartment

23     in the quarter panel area concealed packaging containing approximately 7.40 kilograms

24     (16.28 pounds) of methamphetamine, a Schedule II Controlled Substance, and

25     approximately 8.58 kilograms (18.89 pounds) of marijuana, a Schedule I Controlled

26     Substance.  Defendant was arrested and invoked his constitutional right to remain silent.

27          On July 12, 2011, Defendant waived indictment and agreed to allow the United

28     States to file an Information charging him with importation of approximately 7.4

kilograms of methamphetamine in Count One and 8.58 kilograms of marijuana in Count Two in violation of 21 U.S.C. §§ 952 and 960. (ECF No. 16). Count One carried a minimum mandatory sentence of ten years and a maximum sentence of life imprisonment. Count Two carried a maximum five years imprisonment.

On August 4, 2011, Defendant appeared before the Magistrate Judge and entered pleas of guilty to both counts pursuant to a Plea Agreement. (ECF No. 23). The parties agreed to recommend that Defendant receive a four-level downward departure for fast track under U.S.S.G. § 5K3.1, a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and agreed to jointly recommend a total offense level under the guidelines of 33. (ECF No. 23 at 8). The parties also agreed in Section X, paragraph A, that Defendant could only seek a downward adjustment for role under U.S.S.G. § 3B1.2(b), with corresponding adjustments under U.S.S.G. § 2D1.1(5), and a downward departure for criminal history under U.S.S.G. § 4A1.3. *Id.* at 9. The parties further agreed to not seek any adjustments, variances, reductions, or departures, including reductions under 18 U.S.C. § 3553, that were not set forth in Section X, paragraph A, and to recommend the statutory mandatory minimum sentence or the low end of the advisory guideline as calculated by the Government in the Plea Agreement. *Id.* at 9-10.

In the Plea Agreement, Defendant stated his guilty plea was knowing and voluntary. *Id.* at 6. DEFENDANT'S REPRESENTATIONS in the Plea Agreement stated:

> A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and consequences of this plea. Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences; revocation of probation, parole, or supervised release in another case; none of which will serve as grounds to withdraw defendant's guilty plea;
>
> B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;
>
> C. No one has threatened defendant or defendant's family to induce this

1    guilty plea; and

2    D.  Defendant is pleading guilty because in truth and in fact defendant is
     guilty and for no other reason.
3
*Id.*
4
       Under the terms of the Plea Agreement the Defendant waived his right to appeal
5
or to collaterally attack his conviction and sentence.  *Id.* at 11.  Defendant initialed each
6
page of the Plea Agreement and signed the Plea Agreement on the last page along with
7
his counsel and counsel for the Government.  *Id.* at 13.  Directly above Defendant's
8
signature, the Plea Agreement stated: "Defendant has consulted with counsel and is
9
satisfied with counsel's representation."  *Id.*
10
       During the plea colloquy the Defendant, represented by counsel, acknowledged
11
he had been sworn under penalty of perjury and that he could be prosecuted for perjury
12
if he failed to provide truthful answers in the proceedings.  (ECF No. 47 at 3-4).  The
13
Magistrate Judge stated:
14
          THE COURT: Are either of you taking any substance or medication that
15        affects your ability to think clearly?
          THE COURT: Mr. Nunez?
16        THE DEFENDANT: No.
          THE COURT: Are you having any problem understanding what's going
17        on so far?
          THE COURT: Mr. Nunez?
18        THE DEFENDANT: No.
          THE COURT: Mr. Nunez, I have your plea agreement, it is 13 pages,
19        appears to have been signed by you on the last page, has the initials
          "R.N.M." in the lower right-hand corner of each page.  That is your
20        signature and initials, sir?
          THE DEFENDANT: Yes.
21        THE COURT: There is also an addendum to your plea agreement that is
          four pages, appears to have been signed by you on the last page and
22        initialed on each page.  That is also your signature and initials?
          THE DEFENDANT: Yes.
23        THE COURT: And, sir, please understand as I refer to your plea
          agreement going forward, I'll be referring to these documents as if they
24        were one document.  Do you understand that?
          THE DEFENDANT: Yes.
25        THE COURT: Okay.   Counsel, are all the terms of the agreement
          contained in the written document?
26        THE COURT:  For Mr. Nunez?
          DEFENSE COUNSEL: Yes, Your Honor.
27        THE COURT: Okay.  Gentlemen, before you signed you plea agreement,
          did you have an opportunity to read it or have it explained to you in a way
28        that you could understand it?
          THE COURT: Mr. Nunez?

THE DEFENDANT: Yes.
THE COURT: And did you have time to discuss it with your attorney
before you signed it and were whatever questions you had answered?
THE COURT: Mr. Nunez?
THE DEFENDANT: Yes.
THE COURT: Do either of you now have any questions about the terms
or the language of your plea agreement?
THE COURT: Mr. Nunez?
THE DEFENDANT: No.
THE COURT: Okay.  And are you satisfied with the advice that you
received from your attorney?
THE COURT: Mr. Nunez?
THE DEFENDANT: Yes, I am.

*Id.* at 4-7.

The Magistrate Judge advised the Defendant of his right to a speedy and public trial before a judge or a jury, the right to force the Government to prove its case beyond a reasonable doubt, the right to appointed counsel if he could not afford one, and the right to put on a defense to the case against him and introduce evidence on his behalf. The Magistrate Judge also advised the Defendant of his right to have the Court subpoena witnesses and evidence on his behalf, the right to confront and cross-examine witnesses against him, his privileges against self-incrimination, and his right to remain silent. Defendant acknowledged his rights and privileges and agreed to waive his rights for the purposes of pleading guilty to the charges set forth in the Information. The Magistrate Judge reviewed the maximum penalties for the charged offenses and stated the district judge would decide the actual penalties imposed. Defendant acknowledged the district judge is not required to follow the sentencing guidelines' recommendation.

At the conclusion of the plea, the Magistrate Judge stated on the record and in open court: "The Court finds your pleas are freely and voluntarily given, with an understanding, knowing and intelligent waiver of your rights; that you're both competent to enter your pleas, and there is a factual basis for each plea. This Court will therefore recommend that the district judge accept these pleas." *Id.* at 15-16.

On August 19, 2011, the district court accepted the pleas by written order. (ECF No. 26).

On November 4, 2011, the Presentence Report was prepared and submitted to this Court.  (ECF No. 28).  The Presentence Report found a total offense level of 37 and a Criminal History Category of VI, resulting in an advisory guideline range of 360 months to life.  *Id.* at 11.  After accounting for the four-level downward departure for fast track, the advisory guideline range was 235-293 months imprisonment.  *Id.* at 13.  The report recommended a term of 235 months for Count One and a term of 60 months for Count Two, to be served concurrently.  *Id.*  The Presentence Report concluded the Defendant was a career offender under USSG § 4B1.1(a) based on two prior felony convictions.  *Id.* at 5-6.

On November 21, 2011, the Government filed a Sentencing Summary Chart recommending a sentence of 235 months for Count One and 60 months for Count Two, to be served concurrently.  (ECF No. 29).

On December 23, 2011, the Government filed a sentencing memorandum and motion under U.S.S.G § 5K1.1 recommending a total offense level of 33, the guideline calculation as agreed in the Plea Agreement.  The Government moved for an additional two-level downward departure based on Defendant's substantial assistance, for a total offense level of 31, and a guideline range of 188-235 months.  The Government recommended Defendant be sentenced to a term of 188 months in prison.

On January 5, 2012, defense counsel filed a sentencing memorandum requesting a four-level downward departure under U.S.S.G. § 5K1.1, reducing the total offense level to 29 and the advisory guideline range to 151-188 months.  (ECF No. 36 at 3). Defense counsel requested a sentence of 120 months imprisonment.  *Id.*  Counsel explained that Defendant was "repeatedly physically assaulted by his father" and as a result he "turned to alcohol and marijuana as a form of escape and started using both substances at 13."  *Id.* at 2.

On January 9, 2012, Defendant appeared before this Court for a sentencing hearing.  (ECF No. 46).  In consideration of Defendant's family history, the abuse he suffered when growing up, his addiction problems and how that addiction contributed

1   to his involvement in the offense, defense counsel requested a 120 month sentence, a
2   "substantial departure" from the recommendations of the Government and Probation.
3   *Id.* at 5. The Government orally moved for a one-level departure in addition to the two-
4   level departure crediting Defendant for information he provided which led to the arrest
5   of an individual smuggling aliens, not drugs. *Id.* The Government recommended 168
6   months imprisonment based on a total offense level of 30. *Id.*

7       At the sentencing hearing, the Court found the base level offense was 38 under
8   U.S.S.G. § 2D1.1, and applied a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(5),
9   and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §
10  3E1.1. The Court found the total offense level was 37 and the Defendant had 8 criminal
11  history points based on two prior drug convictions in 1986 and 1999. The Court found
12  the Criminal History Category was VI based on the Defendant's career offender status,
13  and the advisory guideline range before departures was 360 months to life. The Court
14  found a four-level downward adjustment for fast track and a four-level reduction under
15  U.S.S.G. § 5K1.1 was fair and appropriate and that the advisory guideline range was
16  151 to 188 months imprisonment. After considering of all the factors set forth in 18
17  U.S.C. § 3553, the Court sentenced the Defendant to 151 months imprisonment for
18  Count One and 60 months imprisonment for Count Two to be served concurrently,
19  followed by a five-year term of supervised release on Count One and a two-year term
20  of supervised release on Count Two to be served concurrently. The Court also
21  recommended Defendant participate in the Residential Drug Abuse Program (RDAP).
22  During the sentencing hearing, the Court confirmed with defense counsel that the
23  Defendant had waived his rights to appeal or collaterally attack his sentence. *Id.* at 15.

24      On January 3, 2013, Defendant filed a motion to vacate, set aside or correct under
25  28 U.S.C. § 2255. (ECF No. 42). Plaintiff United States filed a Response in
26  Opposition. (ECF No. 48). Defendant filed a Traverse. (ECF No. 50).

27                          **CONTENTIONS OF PARTIES**

28      Defendant moves the Court to vacate, set aside or correct his sentence on the

grounds that his plea was not knowing and voluntary and that he did not understand the nature of the charge and the consequences of the plea. (EFC No. 42 at 5). Defendant contends his counsel "never went over the plea agreement" and just told him to "inicial [sic] and signed [sic]." *Id.* Defendant also contends his counsel failed to disclose to the Court the full extent of his cooperation. Defendant asserts that he was given cooperation credit for providing information about alien smuggling when he provided information about members of the drug cartel. *Id.* Defendant asserts that he was denied effective assistance of counsel. *Id.* Defendant asserts his counsel mistakenly told him he would be denied sentencing departures based on 1) his addiction problems and 2) the claim that he committed the offense while under duress. *Id.*

Plaintiff United States contends that Defendant waived his right to appeal or collaterally attack his conviction and sentence in the Plea Agreement and defense counsel acknowledged this waiver during Defendant's sentencing hearing. Plaintiff United States asserts that Defendant did not raise his argument of ineffective assistance of counsel before this Court or on direct appeal and therefore he cannot collaterally attack his sentence. Plaintiff United States asserts that Defendant alleged no facts which would support a claim that his counsel's performance was deficient or that he suffered any prejudice.

## APPLICABLE LAW

28 U.S.C. § 2255 provides that "A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without the jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

If any of these grounds exists, the court "shall vacate and set the judgment aside and shall discharge the prisoner or release him or grant a new trial or correct the

1   sentence as may appear appropriate." *Id.* Where the motion, files, and records of the

2   case "conclusively show that the prisoner is entitled to no relief," the court need not

3   hold an evidentiary hearing to address his allegations. *Id.*; *see also United States v.*

4   *Zuno-Arce*, 209 F.3d 1095, 1102 (9th Cir. 2000), *rev'd. on other grounds*.

5          A waiver barring collateral attack of a conviction or sentence is enforceable when

6   voluntarily made. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)

7   (citations omitted). "A defendant's wavier of appellate rights is enforceable if (1) the

8   language of the waiver encompasses his right to appeal on the grounds raised, and (2)

9   if the waiver was knowingly and voluntarily made." *United States v. Jeronimo*, 298

10  F.3d 1149, 1153 (9th Cir. 2005). Plea agreements are contractual in nature, and their

11  plain language will generally be enforced if the agreement is "clear and unambiguous

12  on its face." *Id.* "A waiver of the right to appeal is knowing and voluntary where the

13  plea agreement as a whole was knowingly and voluntarily made." *Id.* at 1154. "A plea

14  agreement ... that waives the right to file a petition under § 2255 is unenforceable with

15  respect to an ineffective assistance of counsel claim (IAC) that challenges the

16  voluntariness of the waiver." *Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir.

17  2005) (citation omitted).

18                          **RULING OF THE COURT**

19         Pursuant to the terms of the Plea Agreement, the Defendant waived "to the full

20  extent of the law, any right to appeal or to collaterally attack the conviction and

21  sentence, including any restitution order, unless the Court imposes a custodial sentence

22  above the greater of the high end of the guideline range recommended by the

23  Government pursuant to this agreement at the time of sentencing or statutory mandatory

24  minimum term, if applicable." (ECF No. 23 at 11). In this case, the record shows the

25  Defendant waived his right to bring a § 2255 motion to attack his conviction and

26  sentence. *Id.* At the time of sentencing the Government recommended an adjusted

27  offense level of 30 and a resulting guideline range of 168-210 months. (ECF No. 46 at

28  8). The Government recommended a sentence of 168 months. *Id.* The Court imposed

1  a sentence of 151 months imprisonment for Count One and 60 months imprisonment

2  for Count Two to be served concurrently. *Id.* at 14.

3    An express waiver of the right to appeal in a negotiated plea agreement is valid

4  if knowingly and voluntarily made. *See United States v. Rahman*, 642 F.3d 1257, 1259

5  (9th Cir. 2011). In this case, the record of the plea colloquy and the sentencing hearing

6  show that waiver was knowing and voluntary. Defendant entered into a written Plea

7  Agreement with the advice of counsel and represented in open court that the plea was

8  knowing and voluntary, that he understood the plea agreement and that he was satisfied

9  with the advice from his counsel. (ECF No. 47 at 4-7). At the plea colloquy, the

10  Defendant represented to the Magistrate Judge under penalty of perjury that he initialed

11  each page of the Plea Agreement and signed the last page of the Plea Agreement. *Id.*

12  The Magistrate Judge thoroughly reviewed the Plea Agreement in all aspects. The

13  Magistrate Judge specifically advised the Defendant of the rights he was giving up by

14  pleading guilty. *Id.* at 7-8. Defendant indicated on the record that he understood the

15  rights he was giving up. *Id.* The Magistrate Judge found the guilty plea was knowing

16  and voluntary. *Id.* at 15-16. Defendant filed no objections to the recommendation of

17  the Magistrate Judge and this Court accepted the guilty plea. (ECF No. 46). At

18  sentencing, this Court confirmed with defense counsel the Defendant's waiver of his

19  rights to appeal or collaterally attack his sentence. *Id.* at 15. Defendant did not waive

20  his right to bring an ineffective assistance of counsel claim pursuant to a § 2255

21  petition, regarding the voluntariness of the appeal waiver. *See Lampert*, 422 F.3d at

22  871.

23    In order to prevail on a claim of ineffective assistance of counsel the Defendant

24  must show: 1) the representation of counsel fell below an objective standard of

25  reasonableness and 2) any deficiencies in counsel's performance were prejudicial. *See*

26  *Strickland v. Washington*, 466 U.S. 688, 690 (1984). Both deficient performance and

27  prejudice are required before it can be said a conviction or sentence resulted from a

28  breakdown in the adversary process that rendered the result of the proceedings

1 unreliable and thus in violation of the Sixth Amendment. *See United States v. Thomas*,

2 417 F.3d 1053, 1056 (9th Cir. 2005).

3    In order to show counsel's performance fell below an objective standard of

4 reasonableness, Defendant must identify "material, specific errors and omissions that

5 fall outside the wide range of professionally competent assistance." *United States v.*

6 *Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991) (citation omitted).  The inquiry is

7 "whether counsel's advice was within the range of competence demanded of attorneys

8 in criminal cases." *Turner v. Calderon*, 281 F.3d 851, 879 (9th Cir. 2002) (internal

9 quotations omitted).  In making this determination, the court applies a "strong

10 presumption that counsel's conduct falls within the wide range of reasonable

11 professional assistance..." *Strickland*, 466 U.S. at 689.  A deficient performance

12 requires showing "counsel made errors so serious that counsel was not functioning as

13 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

14    In this case, Defendant asserts defense that counsel's performance was deficient

15 because she told him he would be denied sentencing departures based on 1) his

16 addiction problems and 2) the claim he committed the offense while under duress.  To

17 the extent that the representations could impact the voluntariness of Defendant's plea

18 of guilty, the Court finds that they do not fall outside the range of professionally

19 competent assistance.  Drug addiction or abuse is not ordinarily a reason for a

20 downward departure under the guidelines. *See* U.S.S.G. § 5H1.4.  The terms of the Plea

21 Agreement precluded Defendant from seeking any adjustments or departures other than

22 minor role and criminal history in exchange for the four-level departure for fast track.

23 However, defense counsel asked the Court to consider Defendant's addiction as a

24 mitigating factor in both her sentencing memorandum and at the sentencing hearing.

25 The Court took the arguments of defense counsel into account as part of the history and

26 characteristics of the Defendant.  (ECF No. 46 at 11-14).  There are no facts alleged by

27 the Defendant that would support a claim the performance of his counsel was deficient

28 because his counsel failed to argue Defendant's drug addiction and history warranted

1  a lesser sentence.

2         The guidelines allow a downward departure for imperfect duress.  *See* U.S.S.G.

3  § 5K2.12.  The record shows that the Defendant explained in the Presentence Report

4  that he committed the offense due to his lack of income and drug dependency (ECF No.

5  28) and defense counsel brought these facts to the attention of the Court at the

6  sentencing hearing.  (ECF No. 46 at 3-5).  There are no facts alleged by the Defendant

7  that would support a claim the performance of his counsel was deficient because his

8  counsel failed to argue he committed the offense under duress from drug traffickers.

9  Defendant has failed to identify "material, specific errors and omissions that fall outside

10  the wide range of professionally competent assistance."  *Molina*, 934 F.2d at 1447.

11        This Court further concludes the record in this case is adequate to conclusively

12  show the Defendant's claim of prejudice does not meet the second prong of the

13  *Strickland* standard: a reasonable probability of a different outcome absent counsel's

14  alleged errors.  *Strickland*, 466 U.S. at 694.   The record shows that counsel for the

15  Government moved for an additional one-level departure at the time of the sentencing

16  for a total downward departure of three levels for substantial assistance.  (ECF No. 46

17  at 8).  The record shows that the Court considered the full extent of the information

18  provided by the Defendant and that the Court granted a total of four levels downward

19  departure for substantial assistance as requested by the Defendant.  The Court imposed

20  a sentence of 151 months at the low end of the sentencing guideline range as calculated

21  by the Defendant.

22                                **CONCLUSION**

23        Based on the facts in the record, the Court concludes the advice of defense

24  counsel was "within the range of competence demanded of attorneys in criminal cases."

25  *Turner*, 281 F.3d at 879.  There are no grounds upon which Defendant is entitled to

26  prevail.

27        IT IS HEREBY ORDERED the Motion under 28 U.S.C. § 2255 to vacate, set

28  aside or correct sentence by a person in federal custody filed by the Defendant Ruben

1  Nunez Moreno (ECF No. 42) is denied.

2  DATED:  July 9, 2013

3  *William Q. Hayes*
   **WILLIAM Q. HAYES**
4  United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28